Filed 8/25/14  In re B.M. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| In re B.M., a Person Coming Under the Juvenile Court Law. | C075283 |
| SACRAMENTO COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>B.M. et al.,<br><br>Defendants and Appellants. | (Super. Ct. No. JD232412) |

Appellants M.B. and B.M., mother and father of the minor, respectively, appeal from the juvenile court's orders terminating their parental rights.  Father also appeals from the juvenile court's denial of his petition for modification.  (Welf. & Inst. Code, §§ 388, 366.25, 395.)[1]  Father contends the juvenile court erred in not affording him an evidentiary hearing on his petition for modification and in denying his petition for

---

[1]  Further undesignated statutory references are to the Welfare and Institutions Code.

1

modification.  He also contends a specified individual was entitled to placement preference.  Both mother and father contend the juvenile court erred in finding the minor is adoptable.  Father further contends that the juvenile court erred in not allowing father to fully cross-examine the social worker.  We affirm the juvenile court's orders.

BACKGROUND

On May 11, 2012, Sacramento County Department of Health and Human Services (Department) filed a section 300 petition on behalf of the then three-month-old minor. The minor had been presented in the emergency room with facial bruising, a fractured tibia, and symptoms of seizures.  After numerous scans and tests, it was determined the minor had sustained nonaccidental injuries from being shaken and would likely have developmental delays and impaired vision as a result.  The parents denied any knowledge of the minor having been shaken.  They declined to meet with the social worker and did not participate in recommended services.

In accordance with the Indian Child Welfare Act (ICWA)[2] the Tyme Maidu Tribe, Berry Creek Rancheria was notified of the proceedings and intervened on behalf of the minor.  The juvenile court found the minor to be an Indian child.  The juvenile court took jurisdiction over the minor, declared him a dependent child of the court, and removed him from parental custody.  The parents were not provided reunification services.

By the time of the social worker's June 2013 section 366.26 report, the minor was a year old.  He was within normal height and weight ranges.  The ventricular-peritoneal shunt, which had been inserted back in July 2012 due to recurrent bilateral subdural hematomas, was tied off in February 2013.  He continued to see a neurologist but no surgical intervention had been required.  He continued to have seizure activity, with his

---

[2]  Section 1901 et seq. of title 25 of the United States Code.

most recent seizure occurring in April 2013, so his seizure medication had been increased.

Despite the minor having sustained multiple retinal hemorrhages, the foster mother reported no current concerns about his vision. The minor was walking unassisted, although he still stumbled and fell frequently. He is flat-footed so the foster mother was looking into orthopedic inserts to assist with his balance.

The minor presented as a quiet, good-natured toddler. He rarely cried, was not aggressive, and got along well with other toddlers in the home. He took two-hour naps and loved to go outside for walks. He was not a picky eater, and tended to stuff food in his mouth and swallow without chewing. He enjoyed music and toys that make sounds, but was sensitive to loud noises. He had no mental health issues of concern.

The social worker reported the minor was generally adoptable but more difficult to place, due to his medical needs and developmental status. She had already had ten home-study-approved families request assessment for adoption of the minor, although none of them seemed to be the best match. The tribe's preference for a permanent placement was the foster mother's adult son, although the Department had concerns about that potential placement.

A July 2013 Far Northern Regional Center developmental report assessed the 17-month-old minor's cognitive, language, fine motor, social, and self-help skills to be in the range of 10 to 12 months. His gross motor skills were in the range of 12 to 14 months. The minor was reported to be making progress in all areas of development, although he still demonstrated overall delays. Weekly therapy was continued.

On October 17 father filed a section 388 petition for modification, seeking placement of the minor in the home of paternal relative, R.Y., who lived in Arizona. In support of his petition father stated that there was information that the foster mother's adult son was inappropriate to be considered as an adoptive parent or legal guardian of the minor. He also stated that R.Y. was qualified as a nonrelated extended family

3

member and was a suitable caregiver. The juvenile court ordered a hearing be held on the petition. The Department, minor, and tribe opposed the petition.

The social worker's October 18, 2013, addendum reported no new medical issues. The minor had not had a seizure since April 2013 and remained stable on his antiseizure medication. The social worker was continuing to receive requests for consideration for adoption from home-study-approved families. Both the Department and the ICWA expert recommended termination of parental rights, with the tribe's preference of the foster mother's adult son and permanent placement, since he qualified as extended family under tribal law. The Department was planning on generating a home study for the foster mother's adult son but noted that, even if that placement were not approved, there were numerous other approved families interested in placement.

The combined hearing on father's section 388 petition for modification and section 366.26 hearing commenced on November 18, 2013. The ICWA expert testified that the recommendation to terminate parental rights and free the minor for adoption was not contingent upon the foster mother's adult son being approved for adoption. The juvenile court denied father's petition without prejudice because it was not ripe.

The social worker testified and reiterated the findings, opinions, and conclusions set forth in her report. She further clarified that when she reported that none of the first ten home-study-approved families were the "best match" for the minor, she meant that none of them were of Native American ancestry, which she thought would be best if at all possible. The homes were otherwise suitable. She no longer considered the minor to be medically fragile and, even knowing the minor's medical needs, she had received a lot of interest from families seeking to be considered for placement. She also noted that the minor is a pleasant child, not fussy, and likes to initiate contact with adults.

The juvenile court expressly considered the particular characteristics of the minor at length, along with the willingness of R.Y. and the foster mother's adult son to adopt and the interest of numerous other families in adopting the minor, and found him to be

4

adoptable.  The court then adopted the Department's recommended findings as orders and terminated parental rights.

DISCUSSION

I

Father contends the juvenile court erred in permitting the Department and the minor to argue that he was not entitled to a contested hearing on his section 388 petition for modification after the juvenile court had already set the matter for hearing.  We need not consider whether the Department and the minor were entitled to so argue because no prejudice could have resulted therefrom since the juvenile court did, in fact, have a hearing on the petition.

The matter was originally set for November 14, 2013, continued at father's request, and conducted on November 18, 2013.  The juvenile court considered documentary evidence and argument, and then denied the petition.  Thus, contrary to father's assertion, the petition was not summarily denied.  (See *In re C.J.W.* (2007) 157 Cal.App.4th 1075, 1080-1081 [§ 388 petition not summarily denied without hearing where juvenile court heard argument and considered written evidence, but did not take testimony].)  Having failed to establish any prejudice from his claim of error, no further consideration of reversal is required.  (Cal. Const., art. VI, § 13.)

II

Father also argues that the juvenile court abused its discretion in denying his section 388 petition for modification.  In this regard, he appears to claim that he made a showing that R.Y. had placement preference and, accordingly, he sufficiently justified his requested change in placement.  Father did not, however, meet his burden to show there had been a change of circumstances.

Section 388 provides, in part: "Any parent . . . may, upon grounds of change of circumstance or new evidence, petition the court in the same action in which the child was found to be a dependent child of the juvenile court . . . for a hearing to change,

5

modify, or set aside any order of court previously made or to terminate the jurisdiction of the court. . . . [¶] . . . [¶] . . . If it appears that the best interests of the child . . . may be promoted by the proposed change of order, . . . recognition of a sibling relationship, termination of jurisdiction, or clear and convincing evidence supports revocation or termination of court-ordered reunification services, the court shall order that a hearing be held . . . ."

"The parent requesting the change of order has the burden of establishing that the change is justified. [Citation.] The standard of proof is a preponderance of the evidence. [Citation.]" (*In re Michael B.* (1992) 8 Cal.App.4th 1698, 1703.) "[T]he petitioner must show changed, not changing, circumstances. [Citation.] The change of circumstances or new evidence 'must be of such significant nature that it requires a setting aside or modification of the challenged prior order.' [Citation.]" (*In re Mickel O.* (2011) 197 Cal.App.4th 586, 615-616, italics omitted.)

Determination of a petition to modify is committed to the sound discretion of the juvenile court; absent a showing of a clear abuse of discretion, the decision of the juvenile court must be upheld. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; *In re Robert L.* (1993) 21 Cal.App.4th 1057, 1067.)

The order which father sought to change by his petition was the juvenile court's disposition order giving the Department authority to place the minor in foster care. We are unable to discern, either from his argument here, or his petition in the juvenile court, precisely what father claims is the change of circumstances or new evidence. The only claim of changed circumstances appears to be father's vague assertion in an attachment to his petition that "it has become clear that the Department's *proposed* permanent plan for [the minor] is not appropriate and specifically contrary to his best interest." (Italics added.) Father objected to the possibility that the current caretaker's son would ultimately be chosen as the minor's adoptive parent.

6

At best, this assertion suggests there is a *possibility* of a change of circumstances in the future, *if* the Department should select the objected-to placement.[3]  Indeed, in ruling on father's petition, the juvenile court noted that the issue did not appear to be ripe.  The Department had not yet made the plan, *or* the placement, father appeared to want changed.  Adoptive placement occurs after the section 366.26 hearing.  (§ 366.26, subd. (j); California Rules of Court, rule 5.725, subd. (e)(3).)  Accordingly, father's petition was properly denied.

### III

Father also argues that R.Y. was entitled to placement preference under ICWA.  In this regard, he does not assign any error to the juvenile court's orders, other than to state that "[t]he court was not required to endorse the tribe's placement preference for the minor."  Again, father appears to be arguing about the possibility of the Department selecting the foster mother's adult son as the adoptive parent.  The juvenile court, however, did not make a placement order at the hearing, no adoptive placement has been made, and no petition for adoption has been granted.  Thus, his assignment of error is specious.  Furthermore, his premise fails.

The minor here is an "Indian child."  As such, foster care or preadoptive placement preference is a member of the minor's extended family, as defined in section 1903 of title 25 of the United States Code.  (25 U.S.C. § 1915(b).)[4]  That section

---

[3]  To the extent father is arguing that his section 388 petition for modification should be construed as a petition under section 1912(d) of title 25 of the United States Code to invalidate the minor's removal for violation of ICWA, or as a petition under section 1914 of title 25 of the United States Code to invalidate illegal proceedings, he did not make these arguments in the juvenile court and cannot make them for the first time on appeal.  (See *People v. Williams* (2008) 43 Cal.4th 584, 625; *People v. Borland* (1996) 50 Cal.App.4th 124, 129.)

[4]  Section 1915(a) of title 25 of the United States Code governs *adoptive* placement preferences.  Here, the minor had not been found adoptable and adoption selected as the

7

provides: " 'extended family member' shall be as defined by the law or custom of the Indian child's tribe or, *in the absence of such law or custom*, shall be a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew, first or second cousin, or stepparent." (25 U.S.C. § 1903(2), italics added.)

The social worker's section 366.26 report states that R.Y. is a second cousin to the minor's paternal grandmother (a second cousin, once removed), and therefore, outside the fifth degree of consanguinity. Father cites to the minor's counsel's argument in opposition to his petition to establish that R.Y. was actually a second cousin to the minor, and therefore falls within the placement preference of ICWA. First, " 'the unsworn statements of counsel are not evidence.' " (*People v. Wallace* (2004) 33 Cal.4th 738, 754, fn. 3, quoting *In re Zeth S.* (2003) 31 Cal.4th 396, 414, fn. 11.) Second, the tribal representative in this case personally informed the juvenile court that the tribe does not consider R.Y. to be an extended family member. Accordingly, because "extended family member" is first and foremost as defined by the law or custom of the minor's tribe, R.Y. is not an extended family member under ICWA.

Finally, although father argues R.Y. would qualify as a nonrelative extended family member (NREFM) under section 362.7, as it was amended effective *after* the hearing on the petition, he fails to establish the relevance of that information, even if true. First, the "enlarged category of individuals who could qualify as NREFM" which father claims now applies to R.Y. was not in effect at the time of the hearing. (§ 362.7, amended by Stats. 2013, ch. 294, § 1, eff. Jan. 1, 2014.) Second, as we have explained herein, the minor's placement preference is governed by the ICWA guidelines set forth in

permanent plan until the conclusion of the section 366.26 hearing. Thus, although father argues R.Y.'s placement preference under this section, this section did not yet apply. In any event, the definition of " 'extended family member' " is the same under either section. (25 U.S.C. § 1903(2).)

8

section 1903 of title 25 of the United States Code -- and the minor's tribe had determined R.Y. was not an extended family member.

IV

Both mother and father contend the juvenile court erred by terminating parental rights and ordering a permanent plan of adoption because the minor's special needs (i.e. developmental delays and physical impairments) made it unlikely he would be adopted within a reasonable time. The contention lacks merit.

"If the court determines, based on the assessment . . . and any other relevant evidence, by a clear and convincing standard, that it is likely the child will be adopted, the court shall terminate parental rights and order the child placed for adoption. The fact that the child is not yet placed in a preadoptive home nor with a relative or foster family who is prepared to adopt the child, shall not constitute a basis for the court to conclude that it is not likely the child will be adopted." (§ 366.26, subd. (c)(1).)

We review the juvenile court's finding that the child is likely to be adopted within a reasonable time under the substantial evidence standard, giving it the benefit of every reasonable inference and resolving any evidentiary conflicts in favor of affirming. (*In re I.I.* (2008) 168 Cal.App.4th 857, 869.) That is, we must determine whether the record contains substantial evidence from which the court could find clear and convincing evidence that the child was likely to be adopted within a reasonable time. (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1232.)

Determination of whether a child is likely to be adopted focuses first upon the characteristics of the child; therefore, a finding of adoptability does not require that the child already be in a prospective adoptive home. (*In re Sarah M.* (1994) 22 Cal.App.4th 1642, 1649.) However, the fact that a prospective adoptive family has expressed interest in adopting the child is evidence that the child is likely to be adopted by that family or some other family in a reasonable time. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1154; *In re Sarah M.*, at pp. 1649-1651.)

9

Here, the social worker assessed the minor as generally adoptable, although more difficult to place than a child with no special needs. While a social worker's conclusion that a child is adoptable is insufficient, standing alone, to support an adoptability finding (*In re Asia L.* (2003) 107 Cal.App.4th 498, 512), the social worker in this case was an adoption specialist, who was qualified by the juvenile court as an expert in adoptions, with 14 years of specialized experience in assessing and placing for adoption children like the minor here. Furthermore, her *conclusion* was not all the juvenile court had before it in this case.

The evidence presented was that there were 13 or 14 families with pre-approved home studies who were interested in adopting the minor, and that new pre-approved families were continuing to express interest. There were also additional families identified by the tribe that were interested in adopting the minor. These families who were seeking consideration as the minor's adoptive parents were aware that the minor has special needs -- including the fact that he sustained nonaccidental injuries, was seeing a neurologist and a rehabilitation specialist, and was receiving weekly in-home therapy -- and had information about the minor's current functioning, diagnoses, and medications.

Indeed, father's own argument in support of his section 388 petition for modification refutes the claim that the minor is not adoptable. Father submitted evidence that R.Y. was ready, willing, and able to adopt the minor. Her family had completed the Interstate Compact on Placement of Children process and had been approved by the State of Arizona. Thus, another prospective family had expressed interest in adopting the minor.

The issue of adoptability usually focuses on the minor, "e.g., whether the minor's age, physical condition, and emotional state make it difficult to find a person willing to adopt the minor." (*In re Sarah M., supra*, 22 Cal.App.4th at p. 1649.) But while the minor here does have some special needs, they did not appear to be a significant barrier to adoption in this case. The minor has many positive characteristics. He is pleasant,

10

friendly, physically mobile, medically stable, and making some progress with respect to the developmental delays resulting from his physical abuse. Despite his special needs, numerous prospective adoptive families had been identified. Although the social worker was attempting to locate a Native American home, if at all possible, the evidence was more than sufficient for the juvenile court to conclude the minor was likely to be adopted within a reasonable time.

V

Finally, father argues the juvenile court erred in sustaining an objection which, he contends, prevented him from cross-examining the social worker about any legal impediments to the minor's adoption.[5] The cross-examination he contends was improperly thwarted related to the suitability as an adoptive parent of the foster mother's adult son. We find no error.

Where, as here, the minor is generally adoptable, whether a particular identified prospective adoptive family is likely to succeed in adopting the minor is irrelevant. (*In re Scott M.* (1993) 13 Cal.App.4th 839, 844; *In re Sarah M.*, *supra*, 22 Cal.App.4th at pp. 1649-1650.) It is only where a minor is likely to be adopted solely due to the interest of a specific adoptive parent that inquiry into any legal impediments to adoption by that parent becomes relevant. (*In re Sarah M.*, at p. 1650.)

The Department did not contend the minor was adoptable solely because this individual was interested in adopting him. Thus, the suitability of the current caretaker's son as a prospective adoptive parent had no impact on the finding of adoptability or termination of parental rights. Accordingly, the juvenile court's preclusion of father's cross-examination of the social worker in this regard was not error. (*In re Sarah M.*, *supra*, 22 Cal.App.4th at p. 1650.)

---

[5] Although mother does not raise this issue as a contention on appeal, she also complains of it, in passing.

11

DISPOSITION

The orders of the juvenile court are affirmed.


    BLEASE         , Acting P. J.


We concur:


    MAURO         , J.


    HOCH         , J.